IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:07 CV 0156 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| AMERICAN SCRAP TIRE RECYCLES, INC., et al., | ) ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |

On December 3, 2007, Plaintiff United States of America filed a *Motion for Default Judgment* against Defendant 3574 North Myers Road, Ltd. ("NMR") and a *Motion for Summary Judgment* against Defendant American Scrap Tire Recycles, Inc. ("American Scrap"). (Doc. 42). Plaintiff requests an entry of default judgment against NMR for its failure to answer or otherwise respond to Plaintiff's Complaint and Amended Complaints. (*Id.*)  Plaintiff moves for summary judgment against American Scrap to reduce its federal tax assessments to judgment, and to foreclose its tax liens located upon the real property located at 3574 North Myers Road in Geneva, Ohio ("3574 North Myers Road"). (*Id.*)  In seeking the default judgment, Plaintiff requests the Court to order that NMR receive nothing from the proceeds of the foreclosure of the real property at issue. (*Id.*)  For the reasons stated below, the Plaintiff's *Motion for Default Judgment* is DENIED and Plaintiff's *Motion for Summary Judgment* is GRANTED.

**I. FACTS**

American Scrap acquired the real property located at 3574 North Myers Road in Geneva, Ohio on July 2, 1999. (Doc. 42, Plaintiff's Exhibit (PX) 5; Doc. 7, at ¶3.) On or about June 1, 999, First Western Bank, National Association ("First Western") was given a mortgage and a promissory

note by American Scrap in exchange for $350,000. (*Id.*, PX 6, 7.) The mortgage, which referenced the promissory note, was recorded with the Recorder for Ashtabula County on July 2, 1999, at Book 113, Pages 9299 through 9306. (*Id.*) Five individuals signed the promissory note as co-borrowers on behalf of American Scrap: Jack Spector, Frank A. Dugovich, John J. Javorek, Sanford Scroll, and Albert Leonetti. (*Id.*) At some point prior to October of 2002, Sky Bank succeeded First Western as the mortgage and note holder through various mergers. (*Id.*, PX 6.)

On October 1, 2002, Mr. Leonetti transferred $374,292.56, representing the amount outstanding on the Sky Bank mortgage, via wire from his personal account to Sky Bank. (Doc. 42, PX 6, 10.) Upon payment of $374,292.56 from Mr. Leonetti, Sky Bank did not release the mortgage or promissory note. On September 30, 2002, Sky Bank relinquished its interest by entering into an agreement to assign the mortgage and note to NMR. (*Id.*, PX 6, 8.) On October 4, 2002, Mr. Leonetti incorporated NMR, listing himself as its registered agent and sole member. (*Id.*, PX 6, 9.) NMR has never filed any federal tax returns. (*Id.*, PX 6.) The principal office of NMR is located at 13111 Shaker Boulevard, Cleveland, Ohio 44120, which also serves as Mr. Leonetti's office and personal residence. (*Id.*)

Mr. Leonetti holds a separate mortgage and promissory note in his favor against American Scrap to secure a payment of $60,000. (Doc. 42, PX 11; doc. 6, at ¶4.) The mortgage, dated October 5, 2000 and signed by Jack Spector, President of American Scrap, was recorded with the Recorder for Ashtabula County, Ohio on February 26, 2001. (*Id.*, PX 8, 11.)

A delegate of the Secretary of the Treasury made assessments against American Scrap for federal Form 941 employment taxes and federal Form 940 unemployment taxes as follows:

| **Table 1** |
|---|---|---|---|---|
| **Tax Type** | **Tax Period Ended** | **Date of Assessment** | **Date Notice of Federal Lien filed** | **Balance Due as of November 15, 2007** |
| 941 | June 1999 | January 31, 2000 | July 16, 2001 | $4,158.19 |
| 941 | September 1999 | January 31, 2000 | July 16, 2001 | $4,684.59 |
| 941 | December 1999 | February 21, 2000 | July 16, 2001 | $5,112.58 |
| 941 | March 2000 | June 19, 2000 | July 16, 2001 | $6,957.03 |
| 941 | September 2000 | December 18, 2000 | July 16, 2001 | $13,291.44 |
| 941 | December 2000 | June 4, 2001 | September 12, 2001 | $20,825.71 |
| 941 | March 2001 | July 2, 2001 | November 26, 2001 | $22,047.64 |
| 941 | June 2001 | July 8, 2002 | July 24, 2002 | $15,451.64 |
| 941 | September 2001 | July 8, 2002 | July 24, 2002 | $18,685.25 |
| 941 | December 2001 | July 8, 2002 | July 24, 2002 | $22,662.22 |
| 941 | March 2002 | December 24, 2002 | February 5, 2003 | $13,667.90 |
| 941 | June 2002 | February 17, 2003 | May 14, 2003 | $12,791.34 |
| 941 | September 2002 | January 17, 2003 | March 19, 2003 | $2,422.94 |
| 941 | December 2002 | March 24, 2003 | July 23, 2003 | $4,802.28 |
| 941 | March 2003 | June 23, 2003 | September 2, 2003 | $3,724.23 |
| 941 | June 2003 | October 6, 2003 | January 26, 2004 | $7,843.60 |
| 941 | December 2003 | March 26, 2004 | June 14, 2004 | $4,785.10 |
| 941 | March 2004 | July 19, 2004 | September 27, 2004 | $859.76 |
| 941 | June 2004 | September 13, 2004 | November 22, 2004 | $2,945.02 |
| 941 | September 2004 | January 3, 2005 | March 4, 2005 | $2,319.10 |
| 941 | December 2004 | March 14, 2005 | June 3, 2005 | $2,132.39 |
| 941 | March 2005 | May 20, 2005 | November 7, 2005 | $1,634.77 |
| 941 | June 2005 | September 27, 2005 | November 7, 2005 | $2,896.62 |
| 940 | December 2000 | January 17, 2003 | March 19, 2003 | $1,277.48 |
| 940 | December 2001 | January 17, 2003 | March 19, 2003 | $1,191.00 |
| TOTAL: | | | | $199,169.82 |

The State of Ohio, specifically the Ohio Department of Taxation ("Ohio Tax"), the Ohio Bureau of Workers Compensation ("Ohio BWC"), and the Ohio Department of Job and Family Services ("Ohio J&F"), also asserts a number of claims against American Scrap, shown as follows:

| Table 2 | | | | | |
|---|---|---|---|---|---|
| **Ohio J & F** | | **Ohio Tax** | | **Ohio BWC** | |
| Date of Assessment | Balance Due as of November 15, 2007 | Date of Assessment | Balance Due as of November 15, 2007 | Date of Assessment | Balance Due as of November 15, 2007 |
| June 6, 2001 | $606.54 | March 11, 2002 | $632.81 | January 7, 2003 | $3,158.74 |
| September 17, 2001 | $1,671.87 | March 11, 2002 | $353.52 | January 9, 2003 | $1,707.31 |
| November 2, 2002 | $7,247.87 | March 11, 2002 | $443.82 | June 27, 2003 | $468.63 |
| April 11, 2003 | $2,242.91 | January 8, 2003 | $4,314.13 | July 26, 2004 | $7,839.26 |
| September 18, 2003 | $1,625.74 | April 15, 2003 | $572.93 | May 9, 2005 | $179.55 |
| April 29, 2004 | $1,483.75 | April 15, 2003 | $825.61 | June 20, 2005 | $31,359.41 |
| October 18, 2004 | $823.72 | April 15, 2003 | $1,364.19 | | |
| March 30, 2005 | $869.19 | April 15, 2003 | $1,793.03 | | |
| August 24, 2005 | $491.82 | April 15, 2003 | $1,890.40 | | |
| November 7, 2005 | $857.08 | | | | |

Plaintiff filed the instant lawsuit against American Scrap, Ashtabula County, Mr. Leonetti, and the State of Ohio on January 18, 2007. (Doc. 1.) On September 28, 2007, Plaintiff moved the Court to join NMR as a party who also claims or may claim an interest in the property upon which Plaintiff seeks to foreclose. Plaintiff seeks to (a) collect from American Scrap an outstanding unpaid liability for federal internal revenue taxes, plus statutory accruals; (b) establish the validity of the liens of the United States under 26 U.S.C. § 6321 upon all of the property and rights to property of the defendant-taxpayer American Scrap; (c) foreclose the liens of the United States upon the

-4-

property and rights to property of the defendant-taxpayer American Scrap in the real estate known as 3574 North Myers Road; (d) determine the respective interests of the parties in 3574 North Myers Road and the relative priority and amount or percentage of distribution that each party shall receive from the proceeds of a Court-ordered sale of said property; and (e) permit a judicial sale of 3574 North Myers Road.

On November 13, 2007, Plaintiff filed an application to the Clerk for entry of default against NMR for failing to answer or respond to Plaintiff's Amended Complaint within the time period set forth in Federal Rule of Civil Procedure 12(a)(1)(A). (Doc. 38.) On November 21, 2007, NMR filed a *Motion to Plead Instanter.* (Doc. 41.) On December 3, 2007, Plaintiff filed a *Motion for Default Judgment* against NMR and a *Motion for Summary Judgment* against Defendant American Scrap. (Doc. 42.) Plaintiff requests an entry of default judgment against NMR for its failure to answer or otherwise respond to Plaintiff's Complaint and Amended Complaints. (*Id.*) Plaintiff moves for summary judgment against American Scrap to reduce its federal tax assessments to judgment, and to foreclose its tax liens located upon the real property located at 3574 North Myers Road. On December 4, 2007, the Court granted NMR's *Motion to Plead Instanter* and NMR filed its Answer (doc. 43) to the Amended Complaint on December 17, 2007. Also on December 17, 2007, Albert Leonetti and NMR filed a *Response to Plaintiff's Motion for Summary Judgment and Default Judgment*, asserting that Plaintiff's *Motion for Summary Judgment* should be granted and Plaintiff's *Motion for Default Judgment* should be denied. (Doc. 44.) In their *Response*, Mr. Leonetti and NMR stated that they did not believe the issue of priority was properly before the Court, and thus, they desired to reserve the right to further revisit the issue should the Court determine that this issue was properly before the Court. (*Id.*) On January 2, 2008, Plaintiff filed a *Reply*. (Doc. 46.) On

March 19, 2008, the Court held a telephone conference, at which Mr. Leonetti was informed that the Court viewed the issue of priority as an issue properly before the Court. Mr. Leonetti was given one week to file further arguments on the issue of priority and Plaintiff was given one week to file a response. Mr. Leonetti filed a *Supplemental Response to Plaintiff's Motion for Summary Judgment* (doc. 50) on March 26, 2008 and Plaintiff filed a *Supplemental Reply* (doc. 52) on April 1, 2008. American Scrap, Ashtabula County, and the State of Ohio did not file a response or respond to Plaintiff's *Motion for Summary Judgment*.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

In light of the Court's order granting Defendant NMR's *Motion to Plead Instanter* and NMR's subsequent filing of its Answer on December 17, 2007, Plaintiff's *Motion for Default Judgment* is DENIED as moot.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of any such genuine issues of material facts:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party

pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The court must also determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson*, 447 U.S. at 249. In reaching such a determination, however, the court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49. Moreover, the "trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Circuit 1988).

The Supreme Court has held "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### IV. <u>LAW AND ANALYSIS</u>

Plaintiff maintains it is entitled to summary judgment against American Scrap to reduce its federal tax assessments to judgment, and to foreclose its tax liens upon the property located at 3574 North Myers Road. Plaintiff's position is well taken.

Plaintiff submitted evidence in the form of Certificates of Assessments and Payments demonstrating that the Internal Revenue Service ("IRS") has assessed tax liabilities against American Scrap for various federal employment and unemployment taxes totaling $199,169.82, as of November 15, 2007. (Doc. 41, PX 1.)  "A federal tax assessment is presumptively correct." *United States v. Martin*, 87 A.F.T.R. 2d (RIA) 955, 2001 U.S. Dist. LEXIS 1606 (N.D. Ohio 2001) (citing *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986)).  "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." *Id.* (quoting *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992)).

The United States "has several separate procedures through which it can recover [a] tax deficiency," including authorization to file a lien-foreclosure suit in a district court to enforce the tax lien. *American Trust v. American Community Mut. Ins. Co.*, 142 F.3d 920, 922 (6th Cir. 1998) (citing *United States v. Rodgers*, 461 U.S. 677, 682 (1983)).  The Court initially must look to state law to determine whether a taxpayer has rights in the property the United States seeks to reach. *Drye v. United States*, 528 U.S. 49, 58 (1999).  Next, the Court must look "to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of federal tax lien legislation." *Id.*  American Scrap has a property interest in 3574 North Myers Road by virtue of the warranty deed from Thomas J. and Susan C. Picken granting this property to it on July 2, 1999. (Doc. 42, PX 5.)  In addition, several parties in the present action claim interests in the property upon which Plaintiff seeks to foreclose, including the State of Ohio, Ashtabula County, Ohio, Mr. Leonetti, and NMR.  No party has challenged Plaintiff's request to foreclose upon the real property located at 3574 North Myers Road to reduce its tax assessments to

-8-

judgment. Accordingly, the Court finds it appropriate to order the foreclosure sale of 3574 North Myers Road.

As a general rule, "the priority of a federal tax lien is governed by the principle 'first in time, first in right.'" *Keybank Nat'l Assoc. v. Norton*, No. 4:03-cv-2010, 2004 U.S. Dist. LEXIS 29330 (N.D. Ohio 2004) (citing *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 87 (1963)). Under 26 U.S.C. § 6322, a federal tax lien is perfected at the time the lien is assessed.  A lien that is competing with a federal tax lien "must be perfected 'in the sense that there is nothing more to be done to have a choate lien.'" *Keybank*, 2004 U.S. Dist. LEXIS 29330 (quoting *United States v. City of New Britain*, 347 U.S. 81, 84 (1954).  An exception to the "first in time" rule applies under 26 U.S.C. § 6323(a) when a federal lien competes with the interest of a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. *See Id.*.  *See also In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir. 1990).  When a competing lien falls into one of these limited categories, a federal tax lien is perfected at the time the government provides notice complying with the provisions of 26 U.S.C. § 6323(f). *See id.*

Plaintiff has identified the competing interests in 3574 North Myers Road claimed by Mr. Leonetti, Ashtabula County, Ohio, the State of Ohio, and NMR.  On October 8, 2000, Mr. Leonetti obtained a separate mortgage and promissory note in his favor and against American Scrap to secure payment of $60,000. (Doc. 42, PX 11.)  The mortgage was recorded with the Recorder for Ashtabula County, Ohio on February 26, 2001. (*Id.*)  Plaintiff asserts that this mortgage has priority over its Notices of Federal Tax Lien, specified above in Table 1, and thus, the proceeds of the foreclosure sale of the subject property must first satisfy that mortgage, to the extent that Mr. Leonetti proves any outstanding balance that remains.  Next, with respect to Ashtabula County, Plaintiff indicates

that American Scrap appears delinquent in its real estate taxes due to the county.  Plaintiff asserts that pursuant to 26 U.S.C.§ 6323(b)(6), these real estate taxes constitute liens which have superpriority over the federal tax liens, and therefore, must also be satisfied first from the proceeds of the foreclosure sale of 3574 North Myers Road.  The State of Ohio asserts several claims, which include Ohio Tax, Ohio BWC, and Ohio J&F claims.  Plaintiff asserts that these claims do not rise to the level of judgment liens that compete with Notices of Federal Tax Lien, and thus, the "first in time, first in right" rule applies to those claims which compete with the dates the federal tax liens first arose at the time of the assessment.  With respect to NMR, Plaintiff contends that the assignment of the Sky Bank mortgage to NMR does not take priority over the Notices of Federal Tax Lien because (1) the corporation is not as a "purchaser" for the purposes of § 6323, and (2) Mr. Leonetti, as the nominee of NMR, is not entitled to subrogate to the position formerly held by Sky Bank.  Neither the State of Ohio nor Ashtabula County has contested Plaintiff's assertion of the proper priority order of the parties to the proceeds from a foreclosure sale of 3574 North Myers Road.  However, Mr. Leonetti and NMR (hereinafter referred to as "Defendants") dispute Plaintiff's assertion that the assignment of the Sky Bank mortgage to NMR does not take priority over the Notices of Federal Tax Lien.

### 1. Whether NMR is a "Purchaser" or a "Holder" for the Purposes of § 6323

Defendants argue that NMR is a validly created limited liability company that purchased from Sky Bank an assignment of the Sky Bank note and mortgage, and judgment, for valuable consideration, and thus, stepped into the place that Sky Bank occupied as the first and best lien holder.

The term "purchaser" is defined in 26 U.S.C. § 6323(h)(6) as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."  Because § 6323 expressly excludes lien interests from the definition of "purchaser," NMR cannot be a "purchaser" of the "first lien."

NMR also cannot be a holder of a "security interest" because § 6323(h)(1) requires the holder of such a security interest to have "parted with money or money's worth."  Defendants argue that the $374,292.56 Mr. Leonetti paid to Sky Bank provided good and valuable consideration for a written assignment of the Sky Bank mortgage and note.  The federal regulations to § 6323(h)(1) define "money or money's worth" as:

> money, a security . . . , tangible or intangible property, services, and other consideration reducible to a money value. . . .  A relinquishing or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights is not a consideration in money or money's worth.  Nor is love and affection, promise of marriage, or any other consideration not reducible to a money value a consideration in money or money's worth.

26 C.F.R. § 301.6323(h)-1.  Because Mr. Leonetti was primarily liable on the Sky Bank mortgage as a co-borrower, his payment to Sky Bank of the amount outstanding on the mortgage only satisfied the prior obligation he and the other co-borrowers had on the mortgage. *See The Citizens Bank of De Graff v. Hughes*, No. 8-81-4, 1981 Ohio App. LEXIS 12632, at *3 (Ohio Ct. App. 1981).  This payment could not contemporaneously serve as consideration for the assignment of the mortgage.  Because the payment fulfilled Mr. Leonetti's obligation to Sky Bank, neither Mr. Leonetti nor NMR parted with any additional "money or money's worth" to assign that same obligation.  Moreover, NMR was not incorporated until three days after the purported assignment, and thus it could not have been the assignee because it was not in existence on the date of the purported assignment.

Accordingly, the Court concludes that NMR does not qualify as a "purchaser" or as a "holder of a security interest" under 26 U.S.C. § 6323.

**2. Whether Mr. Leonetti or NMR are Entitled to Subrogation**

The Court must next determine whether Defendants are entitled to subrogation. Section 6323(i)(2) provides that "[w]here, under local law, one person is abrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for the purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). Under the doctrine of subrogation, as the result of the payment of an obligation by a person who is not the principal debtor, the former is substituted in the place of the creditor in relation to the obligation of the debtor. *Maryland Cas. Co. v. Gough*, 146 Ohio St. 305, ¶2 of the syllabus (Ohio 1946). The Sixth Circuit has defined subrogation as "the substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *See Morris v. Crete Carrier Corp.*, 105 F.3d 279 (6th Cir. 1997) (quoting Black's Law Dictionary 1427 (6th ed. 1990). In Ohio, conventional subrogation "is premised on the contractual obligations of the parties, either expressed or implied." *N. Buckeye Educ. Council Group Health Benefits Plan v. Lawson*, 103 Ohio St. 3d 188, 192-93 (Ohio 2004); *State v. Jones*, 61 Ohio St.2d 99, 100-101 (Ohio 1980).

"Subrogation is allowed only in favor of one who has been obliged to pay the debt of another, and not in favor of one who pays a debt in the performance of his own primary obligation." *PIE Mutual Ins. Co. v. Ohio Ins. Guaranty Assoc.*, 66 Ohio St. 3d 209, 213 (Ohio 1993) (quoting *Maryland Cas. Co.*, 146 Ohio St. at ¶3 of the syllabus). Because Mr. Leonetti was a principal co-borrower on the note securing the Sky Bank mortgage, he is not entitled to subrogation with respect

-12-

to the Sky Bank mortgage.  Plaintiff argues that in addition, NMR is not entitled to subrogation.  Plaintiff asserts that because Mr. Leonetti was a co-borrower on the note securing the mortgage, he could not assign the Sky Bank mortgage to himself and so he incorporated NMR to obtain an assignment of the mortgage.  Plaintiff asserts that because NMR was incorporated for the sole purpose of this single transaction, its corporate form should be disregarded.  Plaintiff's arguments are well taken.

Under Ohio law, there are three elements that must be shown in order to pierce the corporate veil and disregard the corporate form: (1) control over the corporation by those to be held liable so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable exercised in such a manner as to commit fraud or an illegal act against the entity seeking to disregard the corporate form; and (3) injury or unjust loss resulting to the plaintiff from such control and wrongdoing. *Taylor Steel, Inc. v.* Keeton, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 289 (Ohio 1993)).

The first element, a restatement of the alter-ego doctrine, requires the plaintiff to "show that the individual and the corporation are fundamentally indistinguishable." *Id.* There are several factors Ohio courts consider in determining whether an entity is an alter ego of the individual, including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property [sic] for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Id.* (citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 422-23 (Ohio Ct. App. 1991)).  In construing the facts in a light most favorable to Defendants, the Court concludes they have failed

to raise an issue of material fact as to the first element for piercing the corporate veil. Defendants admit that Mr. Leonetti filed the Articles of Organization for NMR with the Ohio Secretary of State on October 4, 2002, three days after transferring the amount outstanding on the Sky Bank mortgage from his personal account to Sky Bank in exchange for an assignment of the mortgage and note to NMR. (Doc. 42, PX 6.) Defendants admit that Mr. Leonetti is the only registered agent and sole member of NMR, and that NMR has never filed any federal tax returns. (*Id.*) Defendants also admit that the principal office of NMR, located at 13111 Shaker Boulevard, Cleveland, Ohio 44120, serves as Mr. Leonetti's personal office and/or personal residence. (*Id.*) When Plaintiff requested through formal discovery that Mr. Leonetti produce all documents that touch upon or relate to accounts, finances, tax returns, meetings, minutes, employees, and members of NMR, Mr. Leonetti failed to produce such documents. Defendants have thus failed to point to any evidence indicating that NMR is adequately capitalized, has observed corporate formalities, maintains corporate records, and was created for any purpose other than to serve as a nominal entity Mr. Leonetti used to obtain an assignment of the Sky Bank mortgage and note. Accordingly, the Court concludes the first element for piercing the corporate veil is met.

The second element of piercing the corporate veil—the "fraud or illegal act" requirement—has been consistently interpreted by Ohio courts to mean "a harmful, unfair, unjust, inequitable, or wrongful act rather than solely a criminal one." *Taylor Steel*, 417 F.3d at 608. Thus, the Court must determine whether Mr. Leonetti's control over NMR was exercised in such a way as to commit a harmful, unfair, inequitable, or wrongful act. Mr. Leonetti admits in response to Plaintiff's request for admission number three that he was primarily liable on the Sky Bank mortgage. (Doc. 42, PX 6.) Mr. Leonetti denies the same in response to Plaintiff's request for admission number eighteen and asserts that American Scrap was primarily liable for the Sky Bank

-14-

mortgage (*Id.*)  However, defendants admit that the $350,000 Sky Bank mortgage was made to American Scrap, Mr. Leonetti, and four other co-borrowers who were jointly and severally liable for the payment of the mortgage. (Doc. 6, at ¶1; doc. 43, at ¶1; doc. 42, PX 7.)  And, a review of the promissory note shows that Mr. Leonetti signed the note as a co-borrower, along with Frank A. Dugovich, Jack Spector, and John J. Javorek and Sanford Scroll, who signed the note both as co-borrowers and on behalf of co-borrower American Scrap. (Doc. 42, PX 7.)  Thus, the evidence demonstrates that Mr. Leonetti was primarily liable for the payment of the Sky Bank mortgage.  On October 1, 2002, Mr. Leonetti wire transferred from his personal account to Sky Bank $374,292.56, which represented the amount outstanding on the Sky Bank mortgage. (Doc. 42, PX 6, 10.)  Because Mr. Leonetti was primarily liable on the Sky Bank mortgage as a co-borrower, his payment to Sky Bank of the amount outstanding on the mortgage should have operated as a satisfaction of the mortgage. *See Citizens Bank of De Graff*, 1981 Ohio App. LEXIS 12632, at *3 (quoting 32(A) Ohio Jur. 283, par. 654, "Voluntary payment of judgment in full ordinarily operates as a satisfaction thereof at law, whether the payment is made by the judgment debtor himself, or by one of the judgment debtors.")  Instead, Mr. Leonetti sought to have the payment secure an assignment of the mortgage to NMR, which was incorporated four days after he signed the assignment document on behalf of NMR.

A principal debtor who pays an obligation he is bound to pay "cannot, by obtaining assignment of the judgment, keep it alive in order to coerce payment from his coprincipal; nor will he be permitted to accomplish the same result by indirection, in the name of another." *Royal Indemnity Co. v. Becker, et al.*, 122 Ohio St. 582, 587 (Ohio 1930).  Indeed, once payment has been made, the obligation cannot be transferred or assigned. *Citizens Bank*, 1981 Ohio App. LEXIS 12632, at *4-5 (citing 32(A) Ohio Jur. 2d 286, par. 759).  Where two or more debtors are primarily

liable on a debt, the payment of the debt by one of the principal debtors discharges the obligation, and his recourse is the right "to have contributory reimbursement from the others equally bound with him." *In re Martz*, 321 B.R. 845, 851 (N.D. Ohio 2004) (quoting *Terry v. Claypool*, 77 Ohio App. 87, 93 (Ohio Ct. App. 1946).  In absence of agreement to the contrary, the amount of the contributive share is apportioned equally among the co-debtors and the payor may recover a proportionate share from each debtor to the extent that his payment exceeded his proportionate share. *Id.*  The payor is prohibited from increasing his contributive share through an assignment of the obligation rights. *Id.*

Under Ohio law, Mr. Leonetti, as a principal debtor of the Sky Bank mortgage and note, is proscribed from taking an assignment of the mortgage and note by paying the obligation in full.  If Mr. Leonetti was allowed to obtain such an assignment by paying the debt in full, he would be able to seek a judgment against his co-borrowers for the full amount of the debt without a reduction for his proportionate share, in violation of contribution rights under Ohio law.  Not only does the law prohibit Mr. Leonetti from accomplishing this scheme directly, but it also prohibits Mr. Leonetti from accomplishing the same result indirectly by obtaining an assignment in the name of another. The Court has already determined that NMR is a nominal entity that retains no separate identity from Mr. Leonetti.  It is clear that NMR was created solely for the purpose of obtaining an assignment of the Sky Bank mortgage, which Mr. Leonetti himself could not obtain under Ohio law. The Court concludes that Mr. Leonetti's control over NMR was exercised in such a way as to commit an inequitable and wrongful act.  Thus, the second element for piercing the corporate veil is met.

Were Mr. Leonetti's efforts permitted, it would impair the priority position of Plaintiff's properly filed tax liens and reduce the proceeds due the United States.  Thus, the Court concludes

that all of the elements for piercing the corporate veil are met and therefore, it is appropriate to disregard NMR's corporate form. Accordingly, NMR is not entitled to subrogation with respect to the Sky Bank mortgage.

### 3. Proper Priority Order of the Parties

Mr. Leonetti and NMR have failed to present evidence sufficient to raise an issue of material fact as to whether they are entitled to priority over the Notices of Federal Tax Lien and thus, their claim of priority fails as a matter of law. As stated previously, neither the State of Ohio nor Ashtabula County has contested Plaintiff's assertion of the proper priority order of the parties to the proceeds from a foreclosure upon 3574 North Myers Road. Accordingly, the Court finds it appropriate to adopt Plaintiff's proposed priority order of the parties. Plaintiff acknowledges that the $60,000 mortgage held by Mr. Leonetti and recorded on February 26, 2001, and the real estate taxes due Ashtabula County in the amount of $8,880.78 as of November 26, 2007, have priority over its Notices of Federal Tax Lien. Therefore, this mortgage and these real estate taxes must be satisfied first from the proceeds of the foreclosure sale of the subject property according to their relative priority position under Ohio law. The priority of the remaining parties claiming an interest to the proceeds from a foreclosure upon the subject property is as follows:

| Table 3 | | | | |
|---|---|---|---|---|
| Claim or Lien | Period | Assessment Date or Filing Date | Date Notice of Federal Tax Lien filed | Amount |
| US 941 | June 30, 1999 | January 31, 2000 | July 16, 2001 | $4,158.78 |
| US 941 | September 30, 1999 | January 31, 2000 | July 16, 2001 | $4,684.19 |
| US 941 | December 31, 1999 | February 21, 2000 | July 16, 2001 | $5,112.58 |
| US 941 | March 31, 1999 | June 19, 2000 | July 16, 2001 | $6,957.03 |
| US 941 | September 30, 2000 | December 18, 2000 | July 16, 2001 | $13,291.44 |
| US 941 | December 31, 2000 | June 4, 2001 | July 16, 2001 | $20,825.71 |

| | | | | |
|---|---|---|---|---|
| Ohio J&F | | June 6, 2001 | | $606.54 |
| Ohio Tax | | March 11, 2002 | | $632.81 |
| Ohio Tax | | March 11, 2002 | | $353.52 |
| Ohio Tax | | March 11, 2002 | | $443.82 |
| US 941 | March 31, 2001 | July 2, 2001 | November 26, 2001 | $22,047.64 |
| Ohio J&F | | September 17, 2001 | | $1,671.87 |
| US 941 | June 30, 2001 | July 8, 2002 | July 24, 2002 | $15,451.64 |
| US 941 | September 30, 2001 | July 8, 2002 | July 24, 2002 | $18,685.25 |
| US 941 | December 31, 2001 | July 8, 2002 | July 24, 2002 | $22,662.22 |
| Ohio J&F | | November 2, 2002 | | $7,247.87 |
| US 941 | March 31, 2002 | December 24, 2002 | February 5, 2003 | $13,667.90 |
| Ohio BWC | | January 7, 2003 | | $3,158.74 |
| Ohio Tax | | January 8, 2003 | | $4,314.13 |
| Ohio BWC | | January 9, 2003 | | $1,707.31 |
| US 940 | December 31, 2000 | January 17, 2003 | March 19, 2003 | $1,277.48 |
| US 940 | December 31, 2001 | January 17, 2003 | March 19, 2003 | $1,191.00 |
| US 941 | September 30, 2002 | January 17, 2003 | March 19, 2003 | $2,422.94 |
| US 941 | June 30, 2002 | February 17, 2003 | May 14, 2003 | $12,791.34 |
| US 941 | December 31, 2002 | March 24, 2003 | July 23, 2003 | $4,802.28 |
| Ohio Tax | | April 15, 2003 | | $572.93 |
| Ohio Tax | | April 15, 2003 | | $825.61 |
| Ohio Tax | | April 15, 2003 | | $1,364.19 |
| Ohio Tax | | April 15, 2003 | | $1,793.03 |
| Ohio Tax | | April 15, 2003 | | $1,890.40 |
| Ohio J&F | | April 11, 2003 | | $2,242.91 |
| US 941 | March 31, 2003 | June 23, 2003 | September 2, 2003 | $3,724.23 |
| Ohio BWC | | June 27, 2003 | | $468.63 |
| Ohio J&F | | September 18, 2003 | | $1,625.74 |
| US 941 | June 30, 2003 | September 18, 2003 | January 26, 2004 | $7,843.60 |
| US 941 | December 31, 2003 | October 6, 2003 | June 14, 2004 | $4,785.10 |

| | | | | |
|---|---|---|---|---|
| Ohio J&F | | April 29, 2004 | | $1,483.75 |
| US 941 | March 31, 2004 | July 19, 2004 | September 27, 2004 | $859.76 |
| Ohio BWC | | July 26, 2004 | | $7,839.26 |
| US 941 | June 30, 2004 | September 13, 2004 | November 22, 2004 | $2,945.02 |
| Ohio J&F | | October 18, 2004 | | $823.72 |
| US 941 | September 30, 2004 | January 3, 2005 | March 4, 2005 | $2,319.10 |
| US 941 | December 31, 2004 | March 14, 2005 | June 3, 2005 | $2,132.39 |
| Ohio J&F | | March 30, 2005 | | $869.19 |
| Ohio BWC | | May 9, 2005 | | $179.55 |
| US 941 | March 31, 2005 | May 20, 2005 | November 7, 2005 | $1,634.77 |
| Ohio BWC | | June 20, 2005 | | $31,359.41 |
| Ohio J&F | | August 24, 2005 | | $491.82 |
| US 941 | June 30, 2005 | September 27, 2005 | November 7, 2005 | $2,896.62 |
| Ohio J&F | | November 7, 2005 | | $857.08 |

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Default Judgment* is DENIED and Plaintiff's *Motion for Summary Judgment* is GRANTED.  It is further Ordered that the federal tax lien for the liabilities of the defendant-taxpayor American Scrap Tire Recyclers, Inc., in the real property located at 3574 North Myers Road, Ashtabula, Ohio 44041, identified as permanent parcel number 17-023-00-009-00 and as specifically described in paragraph 11 of the Amended Complaint, be foreclosed, and that said property may be sold in a judicial sale, according to law, free and clear, with the net proceeds of the sale after the satisfaction of the direct costs of the sale, to be allocated among the interests of the defendants in accordance with their lawful priorities as set forth in Part IV, Section 3 of this Memorandum and Order.

The United States is directed to provide the Court with a proposed order of sale within 30 days of the date of this order.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
<u>United States Magistrate Judge</u>

Date: April 9, 2008